56 P.3d 138

STATE of Hawai'i, Plaintiff–Appellant,

v.

Kristine K. KALEOHANO, also known
as Kristine K. Kalehano,
Defendant–Appellee.

State of Hawai'i, Plaintiff–Appellant,

v.

Leanda M. Rawlins, also known
as Leanda M. Duvauchelle,
Defendant–Appellee.

Nos. 23828, 23829.

Supreme Court of Hawai'i.

Oct. 7, 2002.

Arleen Y. Watanabe, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellant.

Linda C.R. Jameson, Deputy Public Defender, on the briefs, for defendant-appellee Kristine K. Kaleohano.

Keith E. Tanaka, on the briefs, for defendant-appellee Leanda M. Rawlins.

MOON, C.J., LEVINSON, and NAKAYAMA, JJ., and ACOBA, J., dissenting, with whom RAMIL, J., joins.

Opinion of the Court By MOON, C.J.

Plaintiff-appellant State of Hawai'i (the prosecution) appeals from the September 27, 2000 order of the Second Circuit Court, the Honorable Artemio C. Baxa presiding, granting defendants-appellees Kristine K. Kaleohano and Leanda M. Rawlins's [hereinafter, collectively, the defendants [1]] motion to suppress evidence. Briefly stated, this case involves a routine traffic stop for suspicion of driving under the influence, which ultimately resulted in the discovery of a glass pipe that contained what appeared to be crystal methamphetamine residue. In justifying its warrantless search of Kaleohano's automobile and bag (which contained the glass pipe belonging to Rawlins), the prosecution relies upon a theory of voluntary consent and argues that it was error for the circuit court to find that Kaleohano was at any point unlawfully detained and to conclude that Kaleohano's consent to search was invalidated by the failure of police officers to provide her with *Miranda* warnings. We agree that, under the facts of this case, *Miranda* warnings were not mandated because the police did not possess probable cause to arrest Kaleohano. We also conclude that the police officer's temporary detention of Kaleohano was lawful because it was supported by reasonable suspicion that she was driving while impaired. However, because the circuit court failed to make appropriate findings and conclusions regarding the voluntariness of Kaleohano's consent to the search of her vehicle, we vacate the circuit court's suppres-

sion order and remand this case for further proceedings.

## I. BACKGROUND

On appeal, the prosecution challenges one finding of fact (FOF)—*i.e.*, FOF No. 13—and all of the seven conclusions of law (COL), except for COL No. 3. The findings and conclusions of the court indicate the following:

In the late evening hours on February 19, 1999, Kaleohano was driving eastbound on Molokai's Kamehameha V Highway and was accompanied by Rawlins, who occupied the front passenger seat. At approximately 11:38 p.m., police officer Jay Serle (Officer Serle) observed Kaleohano's black Mustang swerve within its lane of travel and cross the solid double center line twice. Officer Serle suspected that the driver of the car was impaired. He, therefore, decided to stop the vehicle and turned on his blue lights.

At the time he stopped the vehicle, Officer Serle was aware that it belonged to Kaleohano. He also knew that she had been arrested on drug charges in the past, that the car had previously been searched pursuant to a warrant, and that drugs had been recovered. Officer Serle, however, was not involved in the previous arrest or search of Kaleohano's vehicle.

When he approached the vehicle to check on the driver's impairment, Officer Serle recognized both Kaleohano and Rawlins. He observed that Kaleohano's eyes were red and glassy, but did not detect an odor of alcohol. When questioned, Kaleohano denied having had anything to drink that night. When asked to explain why her car had been weaving, Kaleohano claimed that "she was just tired." At the suppression hearing, Officer Serle testified that he ruled out alcohol as a cause of impairment and opted not to subject Kaleohano to field sobriety tests.

Officer Serle had never arrested anyone for driving under the influence of drugs and was not trained in testing for drug impairment. Nevertheless, based on his observation of Kaleohano's erratic driving, her red

1. By order dated December 29, 2000, Kaleohano's appeal in No. 23828 was consolidated with Rawlins's appeal in No. 23829 under appeal No. 23828 for purposes of briefing and disposition.

and glassy eyes, his knowledge that drugs had been recovered from her car in the past, and "the fact that [he] knew she had been arrested for drug use before[,]" Officer Serle suspected Kaleohano was impaired or "possibly a drug carrier at that time or might be in possession of drugs." Officer Serle then asked Kaleohano "for her consent to search the vehicle and told her that she didn't have to consent to the search, that she had the right to refuse, and that she was free to go." He did not read her any *Miranda* warnings, but did inform Kaleohano that she was not under arrest.

Officer Serle had also decided, by this point, that he would not allow Kaleohano to regain control of her car "[b]ecause of possible evidentiary value of the vehicle[ ] and also due to her possible impairment." Although the circuit court recognized that Officer Serle would not allow Kaleohano to regain possession of her car, it also found that Officer Serle *"would have allowed . . . Kaleohano to leave after he was done with his investigation."* (Emphasis added.)

Kaleohano responded to Officer Serle's request for consent to search the vehicle by stating that "she had nothing to hide." Officer Serle testified that Kaleohano "was compliant. She didn't seem to have a problem. She agreed." Although he had obtained oral consent to a search, Officer Serle did not proceed to inspect Kaleohano's vehicle. Instead, he awaited the arrival of police backup while Kaleohano and Rawlins remained in the car. Officer Serle had never before applied for a search warrant; however, he indicated that he would have done so had Kaleohano left the area. He believed he had enough information to obtain a warrant.

Once he was joined by Officer Manaois, Officer Serle asked Kaleohano and Rawlins to exit the vehicle in order to memorialize her consent on Maui Police Department Form # 113A (consent to search form) and to facilitate the search of the vehicle. Officer Serle filled out the consent to search form, which Kaleohano read and signed.

Kaleohano and Rawlins were left under the supervision of Sergeant Aoki, who also appeared at the scene, while Officers Serle and Manaois searched the vehicle. While searching the interior of the vehicle, Officer Serle found a blue, floral print bag. After ascertaining that the bag belonged to Kaleohano, Officer Serle asked for her consent to search it. Officer Serle testified that he informed Kaleohano "that the procedure was that if she didn't consent to a search, that the standard procedure is that. we are obligated to apply for a search warrant." Kaleohano again responded that she had nothing to hide and that she would allow Officer Serle to search the bag. Officer Serle then listed the bag on the consent form and had Kaleohano initial next to the addition. He proceeded to search the bag and discovered a glass pipe with residue resembling that of crystal methamphetamine. At that point, Rawlins informed Officer Serle that the pipe belonged to her. Kaleohano and Rawlins were formally arrested and taken to the Molokai Police Station, where they were read their *Miranda* rights and waived them. Kaleohano thereafter made incriminatory oral and written statements. Kaleohano and Rawlins were subsequently indicted and charged with promoting a dangerous drug in the third degree, in violation of Hawai'i Revised Statutes (HRS) § 712–1243(1) (1993)[2], and prohibited acts related to drug paraphernalia, in violation of HRS § 329–43.5(a) (1993).[3]

On May 19, 2000, Kaleohano moved to suppress the statements and the evidence gathered by Officers Serle and Manaois during the February 19, 1999 traffic stop and search. Rawlins filed a joinder in the motion on June 15, 2000. A hearing was held on June 23, 2000 during which Kaleohano and Rawlins presented different arguments in favor of suppression. Kaleohano argued that her consent to search was vitiated because the police had failed to give her *Miranda* warnings prior to asking her questions likely to elicit an incriminating response even though they had probable cause to arrest her

---

**2.** HRS § 712–1243(1) provides that "[a] person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount."

**3.** HRS § 329–43.5(a) prohibits the use of, or possession with intent to use, paraphernalia such as a glass pipe to introduce controlled substances such as methamphetamine into the human body.

for driving while impaired. Rawlins, on the other hand, maintained that Officer Serle lacked reasonable suspicion to search the vehicle. Rawlins argued that, although Kaleohano's erratic driving may have provided a valid basis for the traffic stop, it was an insufficient predicate to justify the request to search the vehicle, the request that Kaleohano exit the car to give written consent, and the request that Rawlins exit the car to facilitate the search. The record demonstrates that the circuit court believed the two positions were inconsistent inasmuch as Kaleohano's argument depended on a finding of probable cause to arrest while Rawlins' argument was premised on there being no reasonable suspicion to search.[4] At the conclusion of the hearing, the circuit court ruled in favor of the defendants and ordered the evidence suppressed.

The circuit court adopted the "probable cause" argument and concluded that suppression was necessary inasmuch as Kaleohano's right to *Miranda* warnings had been violated because Kaleohano was in police custody as a result of the traffic stop and that she was subjected to interrogation when Officer Serle asked her whether she had been drinking.[5] Because Officer Serle failed to advise Kaleohano of her *Miranda* rights prior to asking her a question "designed and reasonably likely to elicit an incriminatory response[,]" the

circuit court concluded that "[a]ny statements made by Ms. Kaleohano after Officer Serle questioned her about whether she had anything to drink [could not] be admitted against her in trial because Officer Serle's violation of Ms. Kaleohano's *Miranda* rights cultivated a poisonous tree." Furthermore, the circuit court concluded that "Kaleohano's consent to search her vehicle and bag was invalid" because it was tainted by the prior illegality. Finally, the circuit court concluded that the glass pipe containing residue found in Kaleohano's bag, as well as any incriminating statements by Kaleohano and Rawlins following the search of the bag, would also have to be "suppressed as fruits of the poisonous tree."

Before entry of the FOFs and COLs, the prosecution filed a motion for reconsideration on July 10, 2000. At the hearing on September 15, 2000, the prosecution reiterated its original position that no probable cause to arrest existed. Rawlins again advanced her alternative argument that, in the absence of reasonable suspicion, the evidence should be suppressed, and Kaleohano's attorney indicated that he was "leaning more towards [Rawlins'] analysis[.]"[6] The circuit court denied the prosecution's motion for reconsideration, and the FOFs and COLs were filed on

4. Rawlins' attorney repeatedly attempted to steer the attention of the court towards a fourth amendment analysis focusing on the scope of the detention to which Kaleohano and Rawlins were subjected. He acquiesced, however, when the circuit court made it clear that it would accept the "probable cause" argument. Specifically, Rawlins' attorney stated: "Your Honor, if you're saying that if they had probable cause, you would grant the motion to suppress because Miss Kaleohano wasn't given her *Miranda* rights, then I would have to say, okay, we'll submit they had probable cause. If you are going to grant the motion to suppress, of course. But if you are going to deny that motion, I think I have the right to make an alternative argument. That doesn't cut against co-counsel's argument here. I am just saying there is another way of looking at the case too."

5. In its entirety, COL No. 3 reads: "Officer Serle's questioning of Ms. Kaleohano constituted 'interrogation' because Officer Serle's questions concerning Ms. Kaleohano's alcohol use and driving pattern were designed and reasonably likely to elicit an incriminatory response regard-

ing illegal drug use, drug possession, and or driving while impaired with drugs."

6. The dissent argues that "[t]he prosecution may not argue on appeal a different theory than it argued before the trial court as to why evidence should not be suppressed." Dissenting op., 99 Hawai'i at 386, 56 P.3d at 154 (citing *State v. Rodrigues*, 67 Haw. 496, 498, 692 P.2d 1156, 1158 (1985)). Our holding in *Rodrigues* was premised on the absence in the record of "even hints that the State was also relying on a finding of exigent circumstances to justify the warrantless search and seizure, or on a 'good faith' exception theory." *Id.* In view of that record, we deemed the issues of exigency and a "good faith" exception to have been waived. *Id.* Here, on the other hand, the record is replete with indications that all of the parties, either at the initial suppression hearing or at the hearing on the motion for reconsideration, attempted to have the court consider whether Officer Serle's continued detention of Kaleohano was supported by reasonable suspicion. We do not, therefore, deem the issue waived.

September 27, 2000. A timely appeal was filed by the prosecution on October 18, 2000.

## II. STANDARDS OF REVIEW

### A. Motion to Suppress

■ A trial court's ruling on a motion to suppress evidence is reviewed *de novo* to determine whether the ruling was "right" or "wrong." *State v. Edwards*, 96 Hawai'i 224, 231, 30 P.3d 238, 245 (2001) (citing *State v. Jenkins*, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000)). The proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution. *See State v. Wilson*, 92 Hawai'i 45, 48, 987 P.2d 268, 271 (1999) (citations omitted).

### B. Probable Cause Determination

■ In light of article I, section 7 of the Hawai'i Constitution, which provides Hawai'i's citizens greater protection against unreasonable searches and seizures than the United States Constitution, the determination whether probable cause to arrest exists, such that *Miranda* warnings are warranted, is reviewed under a *de novo* standard on appeal. *See State v. Navas*, 81 Hawai'i 113, 123, 913 P.2d 39, 49 (1996).

### C. Findings of Fact

■ A court's FOF are reviewed under the clearly erroneous standard, *Dan v. State*, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994), and "will not be set aside on appeal unless they are determined to be clearly erroneous." *State v. Joyner*, 66 Haw. 543, 545, 669 P.2d 152, 153 (1983) (citations omitted). "A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a

mistake has been committed." *Dan*, 76 Hawai'i at 428, 879 P.2d at 533 (citation and internal quotations omitted); *see also State v. Nelson*, 69 Haw. 461, 469, 748 P.2d 365, 370 (1987). *State v. Meyer*, 78 Hawai'i 308, 311, 893 P.2d 159, 162 (1995).

### D. Conclusions of Law

■ The "right/wrong" standard of review also applies to the trial court's COLs, which allows the appellate court to "examine the facts and answer the question without being required to give any weight to the trial court's answer to it." *State v. Lopez*, 78 Hawai'i 433, 440, 896 P.2d 889, 896 (1995) (quoting *State v. Miller*, 4 Haw.App. 603, 606, 671 P.2d 1037, 1040 (1983)). "Thus, '[a] COL is not binding upon the appellate court and is freely reviewable for its correctness.'" *Id.* (quoting *State v. Bowe*, 77 Hawai'i 51, 53, 881 P.2d 538, 540 (1994)).

## III. DISCUSSION

On appeal, the prosecution advances two points of error. It contends that the circuit court clearly erred in finding that "Officer Serle would have allowed Ms. Kaleohano to leave after he was done with his investigation," FOF No. 13, because it implies that there was a specified period of time during which Kaleohano was not free to leave. The prosecution also argues that it was error for the circuit court to conclude that Officer Serle's failure to give Kaleohano *Miranda* warnings prior to his initial questioning of her required suppression of Kaleohano's statements, invalidated her consent to search, and rendered inadmissible the contraband that was recovered, as well as Rawlins's spontaneous admission of ownership of the contraband. We address each of these points of error in turn.

### A. FOF No. 13 Not Clearly Erroneous

■ A review of the record indicates that FOF No. 13 mirrors testimony that Officer Serle acknowledged he had given before the grand jury that issued the indictment.[7] The prosecution argues that the cir-

---

7. At the suppression hearing, Kaleohano's attorney cross-examined Officer Serle regarding his

cuit court erred in crediting this isolated statement, rather than Officer Serle's repeated affirmations that Kaleohano was free to leave at any time prior to her arrest. It is well-settled that "[t]he trial court, as the finder of fact, may draw reasonable and legitimate inferences and deductions from the evidence. Moreover, it is for the trial court to assess the credibility of witnesses ... and it may accept or reject such testimony in whole or in part." *State v. Kekona,* 77 Hawai'i 403, 407, 886 P.2d 740, 744 (1994) (citations omitted). Accordingly, we hold that the circuit court's finding that Officer Serle would not have permitted Kaleohano to leave until after he had terminated his investigation is not clearly erroneous.

### B. *Miranda Warnings Not Warranted*

In reaching its conclusion that Kaleohano was entitled to *Miranda* warnings when she was first questioned by Officer Serle, the circuit court relied heavily on *State v. Blackshire,* 10 Haw.App. 123, 861 P.2d 736 (1993), in which the Intermediate Court of Appeals (ICA) held that a person who is "seized" is in custody and that interrogation (as opposed to general questioning) begins when an individual has become the focus of an investigation and the questions are designed to elicit incriminating responses. *See id.* at 134–35, 861 P.2d at 742. Applying the holding in *Blackshire* to the facts of this case, the circuit court concluded [8] that Kaleohano was in "custody" as a result of the traffic stop, that she was the focus of an investigation, and that the questions posed by Officer Serle were designed to elicit an incriminating response. The circuit court reasoned that, by omitting *Miranda* warnings prior to questioning Kaleohano regarding her drinking,

Officer Serle had planted the seed from which the poisonous tree grew.

On September 27, 2000, the same day that the circuit court issued its FOF's, COLs, and order granting the defendants' motion to suppress, this court published its opinion in *State v. Ah Loo,* 94 Hawai'i 207, 10 P.3d 728, *reconsideration denied,* 94 Hawai'i 207, 10 P.3d 728 (2000), wherein "we overrule[d] *Blackshire* to the extent that it stands for the proposition that, as a *per se* matter, a person is 'in custody' the moment he or she has been 'seized.'" *Id.* at 211, 10 P.3d at 732.

As *Ah Loo* makes clear, Kaleohano was not in custody for purposes of *Miranda* merely because she had been pulled over pursuant to a valid traffic stop. In *Ah Loo,* we reaffirmed

the principle that, when an officer lawfully "seizes" a person in order to conduct an investigative stop, the officer is not required to inform that person of his or her *Miranda* rights before posing questions that are reasonably designed to confirm or dispel—as briefly as possible and without any coercive connotation by either word or conduct—the officer's reasonable suspicion that criminal activity is afoot.

*Ah Loo,* 94 Hawai'i at 212, 10 P.3d at 733; *see also State v. Wyatt,* 67 Haw. 293, 300–01, 687 P.2d 544, 550 (1984) (holding that, after stopping a motorist for driving without headlights, police officer who detected smell of alcohol emanating from vehicle was not required to issue *Miranda* warnings prior to asking motorist if she had been drinking); *State v. Kuba,* 68 Haw. 184, 185, 706 P.2d 1305, 1307 (1985) (holding that, after police officer had witnessed car straddling two

---

testimony before the grand jury. The relevant portions of this exchange are transcribed below:

Q. And in fact, a juror asked you the question: "If the person in question did not allow you to search the car, what would—what would have been your next action?"

....

Q. And your response to that question was: "We would have secured the car and applied for a search warrant"?

A. Correct.

....

Q. Okay. Now, the juror asked you, "Then at that time she wasn't under arrest?"

A. Correct.

Q. And your answer was, "Yeah, she was free to go at that time"—

A. Correct.

Q. —period. *Well, free to go after I was done with the investigation.*

Q. Is that accurate?

A. Yeah. It's accurate.

(Emphasis added.)

**8.** It should be noted that *Blackshire* is cited as authority for each of the circuit court's seven COLs.

lanes of highway and driving at abnormally slow speed, investigative questioning regarding suspicion of alcohol or drug impairment did not require *Miranda* warnings). Of course, questions posed by police officers during the course of a lawful temporary investigative detention may sometimes amount to custodial interrogation requiring the protections afforded by *Miranda* warnings. However, *Ah Loo* recognized that, "if neither probable cause to arrest nor sustained and coercive interrogation are present, then questions posed by the police do not rise to the level of 'custodial interrogation' requiring *Miranda* warnings." *Id.* at 210, 10 P.3d at 731. We, therefore, examine whether Officer Serle had probable cause to arrest Kaleohano.

In *State v. Texeira,* 50 Haw. 138, 142, 433 P.2d 593, 597 (1967), this court held that "probable cause" exists when the facts and circumstances within the knowledge of police officers and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man or woman of reasonable caution to believe that a crime was being committed. At the time Officer Serle questioned Kaleohano as to whether she had been drinking, he had witnessed Kaleohano's car swerve within its own traffic lane and cross the dividing line twice; he was aware that the car belonged to a known drug user and that, at some point in the past, a lawful search of the car had resulted in the confiscation of drugs; he had also observed Kaleohano's eyes and noted that they were red and glassy. Although these factors may give rise to a reasonable suspicion that Kaleohano was driving while impaired, they do not amount to probable cause for an arrest. *See Kernan v. Tanaka,* 75 Haw. 1, 38 n. 23, 856 P.2d 1207, 1226 n. 23 (1993) (noting that failing a field sobriety test is what usually provides police with probable cause to arrest for driving under the influence), *cert. denied,* 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994).

In the past, this court has rejected the idea that "police observations of conduct which was as consistent with innocent activity as it was with criminal activity" is sufficient to support a finding of probable cause. *See State v. Kanda,* 63 Haw. 36, 48, 620 P.2d 1072, 1080 (1980). Imperfect driving is susceptible of innocent as well as culpable interpretation. The same may be said of Officer Serle's observation that Kaleohano's eyes were red and glassy. As he readily admitted at the suppression hearing, Kaleohano's explanation that she was tired was completely plausible, especially given the late hour at which she was stopped.

This court has also rejected the notion that a person's prior reputation as a drug user, standing alone, was sufficient to establish probable cause for an arrest and, at best, was entitled to only minimal weight when combined with other elements. *See State v. Chong,* 52 Haw. 226, 232, 473 P.2d 567, 571 (1970). To hold differently would undermine the constitutional protections of all citizens. As the United States Court of Appeals for the Tenth Circuit has noted:

> If the law were otherwise, any person with any sort of criminal record—or even worse, a person with arrests but no convictions—could be subjected to a *Terry*-type[9] investigative stop by a law enforcement officer at any time without the need for any other justification at all. Any such rule would clearly run counter to the requirement of a reasonable suspicion, and of the need that such stops be justified in light of a balancing of the competing interests at stake.

*United States v. Sandoval,* 29 F.3d 537, 543 (10th Cir.1994) (emphasis omitted); *see also United States v. Childs,* 277 F.3d 947, 963 (7th Cir.2002) (J. Rovner, dissenting) ("Many people who have been arrested and/or who have spent time in jail will naturally be skittish when stopped and questioned by the police on subsequent occasions, even if they are doing nothing wrong. The fourth amendment demands that an investigatory detention be supported by facts that objectively point to *current* criminal activity." (Emphasis added.)). We conclude that red and glassy eyes, a criminal record, and imperfect driving, standing alone, are insufficient to establish probable cause to arrest a person

---

**9.** Referring to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

for driving under the influence of drugs.[10] Because Officer Serle did not have probable cause to arrest Kaleohano and because he did not subject her to sustained and coercive questioning, the circuit court's COLs cannot stand. *Miranda* warnings were simply not warranted when Kaleohano was questioned about her alcohol consumption.[11]

### C. Reasonable Suspicion to Search the Vehicle

■ On appeal, both Rawlins and Kaleohano advance the alternative argument that Officer Serle lacked reasonable suspicion to search the vehicle. Although the circuit court viewed this case with a focus on constitutional safeguards against self-incrimination, the FOF's included in the September 27, 2000 decision and order are sufficient to address whether Officer Serle's request for consent to search Kaleohano's vehicle was supported by reasonable suspicion.

■ Here, the parties do not dispute, and we agree, that the traffic stop initiated by Officer Serle was valid at its inception. This court has consistently held that, in determining the validity of wholly discretionary automobile stops,

> the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The ultimate test in these situations must be whether from these facts, measured by an objective standard, a [person] of reasonable caution would be warranted in believing that criminal activity was afoot and that the action taken was appropriate.

*State v. Powell*, 61 Haw. 316, 321–22, 603 P.2d 143, 148 (1979) (citations and internal

quotation marks omitted). In this case, the trial court found that "Officer Serle observed [Kaleohano's] vehicle swerving within its lane of travel and crossing over the solid double center line twice." The officer's observations were sufficient to warrant an investigative traffic stop to determine whether Kaleohano was driving while impaired. *See Park v. Tanaka*, 75 Haw. 271, 280, 859 P.2d 917, 921–22 (1993) (holding that testimony that driver weaved and swerved provided reasonable suspicion to stop vehicle); *Kernan*, 75 Haw. at 39, 856 P.2d at 1226 (holding that police officer's observation that car was speeding and weaving onto another lane justified investigative traffic stop). In light of the particular circumstances that gave rise to the traffic stop, Officer Serle was also authorized to detain Kaleohano and carry out an investigation to confirm or dispel, in as brief a time as possible, his reasonable suspicion that she was under the influence of alcohol or drugs. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

■ Here, the defendants argue that Officer Serle exceeded the permissible scope of the traffic stop when he requested Kaleohano's consent to search the vehicle for drugs.[12] We disagree. In *State v. Silva*, 91 Hawai'i 80, 979 P.2d 1106 (1999), we clarified that "police [may not] prolong the detention of individuals subjected to brief, temporary investigative stops—once such stops have failed to substantiate the reasonable suspicion that initially justified them[.]" *Id.* at 81, 979 P.2d at 1107. Because temporary investigative stops involve an exception to the general rule requiring that searches and seizures be supported by probable cause, the

---

10. HRS § 291–7 (1993) provides in relevant part:

> **Driving under the influence of drugs.** (a) A person commits the offense of driving under the influence of drugs if the person operates or assumes actual physical control of the operation of any vehicle while under the influence of any drug which impairs such person's ability to operate the vehicle in a careful and prudent manner. The term "drug" as used in this section shall mean any controlled substance as defined and enumerated on schedules I through IV of chapter 329.

(Bold emphasis in original.)

11. Although titled "dissenting opinion," Justice Acoba's separate opinion is, in actuality, a "concurring and dissenting opinion" inasmuch as he concurs in the majority's conclusion that *Miranda* warnings were not warranted on these facts.

12. FOF No. 16 does not specify the reason Officer Serle asked Kaleohano for her consent to search the vehicle, but it is clear from the context of the finding, coupled with Officer Serle's testimony, that Officer Serle was seeking evidence that Kaleohano had consumed or was in possession of drugs.

scope of such detentions must be narrow. *Id.* (citing *Dunaway v. New York*, 442 U.S. 200, 207–08, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)). We recently outlined, in *State v. Ketchum*, 97 Hawai'i 107, 34 P.3d 1006 (2001), the permissible scope of a temporary investigative stop, noting that

> it is well settled that a temporary investigative detention must, of necessity, be truly temporary and last no longer than is necessary to effectuate the purpose of the detention—*i.e.*, transpire for no longer than necessary to confirm or dispel the officer's reasonable suspicion that criminal activity is afoot. In other words, a temporary investigative detention must be reasonably related in scope to the circumstances which justified the detention in the first place, and, thus, must be no greater in intensity than absolutely necessary under the circumstances.

*Id.* at 125, 34 P.3d at 1024 (quotation marks, citations, and brackets omitted). Determining whether a seizure pursuant to a temporary investigative stop is constitutional also involves a "weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Brown v. Texas*, 443 U.S. 47, 50–51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

■ Officer Serle had reasonable suspicion to believe that Kaleohano was driving while impaired by drugs.[13] He witnessed her vehicle repeatedly crossing the highway dividing line and, upon noting the license plate, realized that the vehicle in question was one in which illegal drugs had been recovered in an earlier search conducted pursuant to warrant. Officer Serle's suspicions were heightened when he recognized the motorist as an individual who had been arrested for drug

13. The dissent states that "Officer Serle did not testify as to any ... specific or articulable facts[ ]" that would warrant further detention of Defendants. Dissenting op., 99 Hawai'i at 386, 56 P.3d at 154. The dissent, however, misconstrues the record. During the suppression hearing, Officer Serle testified as follows:

Q ... And as far as the weaving, you're saying, well, that could show some kind of drug intoxication. You yourself already admitted that you have no background as far as testing drivers or testing people for signs of drug intoxication?

A. I have no training in testing, but I've seen impairment before and I know that does factor into why someone operates a vehicle.

Q. You're just saying from what you saw, which was the weaving, based upon just your own practical experience, that could be a sign of being under the influence of drugs?

A. Correct.

Officer Serle also testified that, "based on her driving pattern, ... [Kaleohano] could have been impaired. She could have—she could have seen my police vehicle and been attempting to stick something under the seat, which caused her to swerve to the side." Moreover, the trial court specifically found that Officer Serle "suspected that Ms. Kaleohano was impaired by an illegal drug." This finding is also reflected in the trial court's COL. Thus, contrary to the dissent, the record demonstrates that Officer Serle testified as to specific or articulable facts motivating his decision to continue questioning Kaleohano after he had excluded alcohol as a cause of impairment. Similarly, the record does not support the dissent's contention that "the prosecution never argued there was reasonable suspicion to detain Defendant for drug impairment." Dissenting op. at 384, 56 P.3d at 152. The prosecutor specifically argued that, "[w]ith regard to Miss Kalehano [sic], the evidence has shown that, after Officer Serle had made a traffic stop, there was indication that led him to believe there may be drugs in the vehicle. That's why he asked for consent to search." The prosecution also made related arguments in its appellate brief:

> The circumstances in the instant case were typical of a temporary noncoercive investigative detention, constituting a limited intrusion not violative of Fourth Amendment protections and noncoercive questions .... Officer Serle, shortly after the traffic stop at 11:38 p.m. based upon Kaleohano's driving pattern of weaving and twice crossing the center line, inquired whether Kaleohano had been drinking to determine the basis for her driving pattern and possible impairment. After receiving a negative response accompanied by Kaleohano's statement that she was just tired, and based upon observation of Kaleohano's red, glassy eyes and knowledge of prior history of her previous arrest for drugs and discovery of drugs in the vehicle pursuant to a search warrant execution, Officer Serle orally asked Kaleohano for consent to search the vehicle .... The brief detention lasting approximately 15 minutes [from] the time the search was initiated certainly qualifies as a limited intrusion. The questions were . . "designed to confirm or dispel the officer's reasonable suspicion[ ]" that Kaleohano may be impaired by drugs [quoting *Ah Loo* ].

charges in the past. Although we have already emphasized that a person's prior history of drug arrests is insufficient to establish probable cause, awareness of past arrests may, when combined with other specific articulable facts indicating the probability of current criminal activity, factor into a determination that reasonable suspicion, sufficient to warrant a temporary investigative stop, exists. *See United States v. Feliciano,* 45 F.3d 1070, 1074 (7th Cir.1995) (emphasizing that "[k]nowledge of ... recent relevant criminal conduct, while of doubtful *evidentiary* value in view of the strictures against proving guilt by association or by a predisposition based on past criminal acts, is a permissible component of the articulable suspicion required for a *Terry* stop." (Emphasis in original.)).

Officer Serle testified that, after realizing that he was dealing with somebody who had prior arrests for drug possession and who was driving a vehicle in which drugs had previously been discovered, he suspected the erratic driving pattern may have been due to Kaleohano's drug impairment or her attempt to hide drugs after spotting the police vehicle on the road behind her. Officer Serle's inference that Kaleohano may have been impaired and that drugs might be involved was supported by his observation that Kaleohano's eyes were red and glassy. When Officer Serle failed to detect an odor of alcohol emanating from Kaleohano's person, it was reasonable for him to infer, through a process of elimination, that Kaleohano's impairment could be drug-related and that Kaleohano's vehicle might contain drugs. *See Terry,* 392 U.S. at 21, 88 S.Ct. 1868 (rational inferences arising from specific facts may support the reasonable suspicion necessary to justify an investigative stop).

The dissent suggests that, "[i]f the officers believed Kaleohano was impaired so as to make driving hazardous," dissenting op., 99 Hawai'i at 383, 56 P.3d at 151, they had only a limited number of options available to them, *i.e.,* they could have "secured the car and parked it or moved it and called someone to pickup Kaleohano and her co-defendant or notified them they could make such calls." Dissenting opinion at 383, 56 P.3d at 151. We

disagree. Although Officer Serle's initial contact with Kaleohano allowed him to exclude alcohol as a cause of impairment, his suspicion that the impairment may have been drug-related was not similarly dispelled, and, therefore, brief questioning aimed at confirming or dispelling his remaining suspicion was justified in light of its reasonableness. Admittedly, Officer Serle's lack of training made it impossible for him to conduct a test that might have provided him with probable cause to arrest Kaleohano for driving while impaired. *See Kernan,* 75 Haw. at 38 n. 23, 856 P.2d at 1226 n. 23. However, we emphasize that Officer Serle's lack of training to conduct a field sobriety test did not disqualify him from briefly questioning Kaleohano. Neither the fourth amendment nor the Hawai'i Constitution

> require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response.

*Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Weighing the strong public interest in minimizing the dangers presented by impaired drivers on our highways against the slight intrusion on Kaleohano's privacy, we cannot say that Officer Serle's attempt to confirm or dispel his reasonable suspicion through a request for consent to search was constitutionally impermissible. We, therefore, hold that, in detaining Kaleohano for the purpose of determining if she was impaired and if she would consent to a search of her vehicle, Officer Serle did not exceed the scope of a temporary investigative stop premised upon circumstances that gave rise to a reasonable suspicion that Kaleohano was driving while impaired or that her vehicle might contain illicit substances.

### D. *Voluntariness of Kaleohano's Consent*

■ At the hearing, and again in their appeal to this court, the defendants have maintained that Kaleohano's consent—although it appeared voluntary—was tainted either by the absence of *Miranda* warnings

or by the unlawful detention to which Kaleohano was subjected when Officer Serle exceeded the permissible scope of the traffic stop. As discussed *supra*, however, we hold that no illegality preceded Officer Serle's request for consent to search.[14] And, although we have concluded that Kaleohano was effectively seized when she agreed to the search of her vehicle, we also hold that her lawful detention does not, as a *per se* matter, validate or invalidate her consent. *State v. Price*, 55 Haw. 442, 444, 521 P.2d 376, 377 (1974) (stating that " 'the mere fact that a suspect is under arrest does not negate the possibility of a voluntary consent' ") (quoting *United States ex rel. Lundergan v. McMann*, 417 F.2d 519, 521 (2d Cir.1969) (citations omitted)).

In this case, the trial court made no specific findings addressing voluntariness. In the absence of such findings, we are unable to exercise our proper appellate function. As we have previously stated,

> whether consent to search has been given voluntarily is a question of fact to be determined by the trial court from the "totality of all the circumstances." Considerable deference must be given in this regard to the findings of the trier of fact, who is best situated to decide the question of voluntariness....
>
> The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court. On appeal[,] all presumptions favor proper exercise of that power, and the trial court's findings—whether expressed or implied—must be upheld if supported by substantial evidence.
>
> *The role of the reviewing court on this issue is thus quite limited.*

*State v. Patterson*, 58 Haw. 462, 468, 571 P.2d 745, 749 (1977) (internal citations omitted) (emphasis added). The dissent attempts to usurp the role of the fact finder and posits that the record as developed is sufficient to establish that Kaleohano's consent was involuntary. We disagree.

### IV.  CONCLUSION

Based on the foregoing discussion, we vacate the circuit court's suppression order of September 27, 2000 and remand this case for further proceedings.

Dissenting Opinion of ACOBA, J. with whom RAMIL, J., joins.

I believe the right result was reached by the second circuit court (the court) in suppressing the glass pipe with residue, seized by Officer Serle on February 19, 1999, and any incriminating statements made by Defendants–Appellants Kristine K. Kaleohano and Leanda M. Rawlins (collectively, Defendants), but on different grounds. I would sustain the court's order to suppress evidence for the reasons stated herein.

### I.

### A.

To the extent the court determined that warnings against self incrimination set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), should have been rendered by Officer Serle before he questioned Kaleohano about whether she had consumed alcoholic beverages, I believe the court was in error. The United States Supreme Court, in *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), analogized a traffic stop to a "*Terry* stop," which, because of its "comparatively nonthreatening character," had never been considered by the Court to be "subject to the dictates of *Miranda*." *Id.* at 439, 104 S.Ct. 3138 (referencing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). In *Berkemer*, a motorist was stopped because his vehicle was weaving. During roadside questioning by a police officer, the defendant made incriminating statements regarding his alcohol and drug use. He was subsequently convicted of operating a motor vehicle while under the influence of alcohol. The Court decided that the statements made by the defendant during the roadside questioning were admissible, in that the questioning was

14. We emphasize that any search of Kaleohano's vehicle, absent her consent, would have been unreasonable because, as discussed *supra*, Officer Serle lacked probable cause to arrest.

not "custodial interrogation" under *Miranda.* *See Berkemer,* 468 U.S. at 439–40, 104 S.Ct. 3138.

The Court "acknowledged ... that a traffic stop significantly curtails the 'freedom of action' of the driver and the passengers, if any, of the detained vehicle[,]" *id.* at 436, 104 S.Ct. 3138, and that " 'stopping an automobile and detaining its occupants constitute a "seizure" within the meaning of [the Fourth] Amendment, even though the purpose of the stop is limited and the resulting detention quite brief.' " *Id.* at 436–37, 104 S.Ct. 3138 (quoting *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)) (brackets in original). However, according to the Court, inasmuch as a traffic stop is "presumptively" temporary and brief and the circumstances of a traffic stop are not as "police dominated" as the interrogations found objectionable in *Miranda, Miranda* warnings were not required unless further circumstances rendered the suspect "in custody" under the federal constitution. *See id.* at 437–39, 104 S.Ct. 3138. The Court explained that "the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.' " *Id.* at 440, 104 S.Ct. 3138 (quoting *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam)).

### B.

In past cases, this court has also held that *Miranda* warnings are ordinarily not required at a traffic stop. In *State v. Wyatt,* 67 Haw. 293, 687 P.2d 544 (1984), and *State v. Kuba,* 68 Haw. 184, 706 P.2d 1305 (1985), the defendants were questioned based on suspicion that they were driving under the influence of alcohol. Although not conceding that these cases are controlling, the majority uses and adopts the references to these cases. In *Wyatt,* warnings were not mandated prior to questioning the defendant or administering a field sobriety test. In that case, Wyatt was

stopped for driving without headlights on. Upon detecting the odor of an alcoholic beverage emanating from Wyatt's car, the investigating officer proceeded to question Wyatt as to whether she had been drinking and administered a field sobriety test. This court held "the record does not reveal the intimidating or inherently coercive factors usually extant when interrogation is conducted in a custodial setting." *Wyatt,* 67 Haw. at 300, 687 P.2d at 550.

In *Kuba,* it was held that questioning which resulted in the defendant's admission that he had consumed four beers and smoked marijuana, did not rise to custodial interrogation requiring warnings. This court decided the seizure was "reasonable to investigate a traffic violation[,]" and the officer engaged in "legitimate, straightforward, and noncoercive questioning necessary to obtain information to issue a traffic citation." *Kuba,* 68 Haw. at 188, 706 P.2d at 1309. The foregoing cases are on point with respect to the necessity of *Miranda* warnings during traffic stops for driving under the influence. I do not believe *State v. Ah Loo,* 94 Hawai'i 207, 10 P.3d 728 (2000), relied on by the majority, is apposite.[1] *Ah Loo* did not involve a traffic stop but concerned questioning of a juvenile by a police officer about underage drinking in a public place.

### C.

Up to and including the point that Officer Serle questioned Kaleohano regarding her driving under the influence, Defendants were not detained beyond that period or purpose recognized as permissible in *Berkemer, Kuba,* and *Wyatt.* Accordingly, to the extent the court's ruling in conclusions of law Nos. 3 and 5 implicated questions concerning alcohol or drug use, the court was wrong in ruling that Kaleohano's *Miranda* rights were violated.

### II.

However, after questioning Kaleohano, Officer Serle determined she was not under the

---

1. The court relied on *State v. Blackshire,* 10 Haw. App. 123, 861 P.2d 736 (1993), in finding that *Miranda* warnings were necessary prior to questioning Kaleohano about being under the influence. *Blackshire* is not dispositive in that that

case did not involve a traffic stop. Moreover, *Blackshire* was overruled by *Ah Loo,* insofar as it equated "seizure" with "custody". *See Ah Loo,* 94 Hawai'i at 212, 10 P.3d at 733.

influence of alcohol. Given the fact that Officer Serle was not trained in conducting field sobriety tests for drugs, he admitted he had no basis for arresting Kaleohano for driving under the influence of drugs. Thus, after Officer Serle initially questioned Kaleohano, further detention of Defendants themselves could only be justified by a reasonable suspicion that they were engaged in criminal activity. *See Terry*, 392 U.S. at 21, 88 S.Ct. 1868; *State v. Joao*, 55 Haw. 601, 525 P.2d 580 (1974). Potential traffic risks could be avoided by other measures. *See infra* discussion Part III. Continuation of the original seizure, then, was unreasonable and illegal unless the officer could point to "specific and articulable facts" from which rational inferences could be drawn that criminal activity was afoot. *Terry*, 392 U.S. at 21, 88 S.Ct. 1868.

In that regard, Officer Serle did not testify as to any such specific or articulable facts. In the absence of such facts, further detention would be illegal. *Cf. State v. Silva*, 91 Hawai'i 80, 81, 979 P.2d 1106, 1107 (1999) (holding that police may not "prolong the detention of individuals subjected to brief, temporary investigative stops—once such stops have failed to substantiate the reasonable suspicion that initially justified them— solely for the purpose of performing a check for outstanding warrants"). In sum, if Officer Serle lacked reasonable suspicion to detain Defendants once the initial traffic stop was concluded, the evidence subsequently seized from Kaleohano's car and any incriminating statements made by the Defendants must be suppressed as "fruits of the poisonous tree." *State v. Edwards*, 96 Hawai'i 224, 241, 30 P.3d 238, 255 (2001). It is apparent Officer Serle was cognizant of this fact because he testified and the prosecution argued that Kaleohano was free to leave and was *not detained.*

### III.

If the officers believed Kaleohano was impaired so as to make driving hazardous, they could have secured the car and parked it or moved it and called someone to pick up Kaleohano and her co-defendant or notified them they could make such calls. Officer Serle did not choose any of the courses outlined above, however, but requested consent to search the vehicle. The majority holds that

> in detaining Kaleohano for the purpose of determining if she was impaired and if she would consent to a search of her vehicle, Officer Serle did not exceed the scope of a temporary investigative stop premised upon circumstances that gave rise to a reasonable suspicion that Kaleohano was driving while impaired or that her vehicle might contain illicit substances.

Majority opinion, 99 Hawai'i at 380, 56 P.3d at 148. It rests this ruling on *"the record demonstrat[ing] that Officer Serle testified as to specific or articulable facts* motivating his decision to continue questioning Kaleohano after he had excluded alcohol as a cause of impairment." *Id.* at 379 n. 13, 56 P.3d at 147 n. 13 (emphasis added). The majority asserts that "the trial court specifically found that Officer Serle 'suspected that Ms. Kaleohano was impaired by an illegal drug.' This finding is also reflected in the trial court's COL." Majority opinion at 379 n. 13, 56 P.3d at 147 n. 13. The fact that Officer Serle may have "suspected" Defendant was impaired does not mean that he *detained Defendant based on reasonable suspicion.* Indeed, the court made no such finding, and in final argument the prosecution characterized such suspicion as "speculation," inasmuch as the officer was not trained to detect drug impairment and the officer "had no idea why she was impaired."

In fact, Officer Serle did not testify he *detained* Kaleohano for the purpose of obtaining her consent, or that such request for consent was pursuant to "a temporary investigative stop." Rather, the prosecution's theory at the suppression hearing was that the searches conducted by the officers were valid because Kaleohano voluntarily consented to them.

### IV.

Officer Serle consistently maintained that, at the time he requested consent to search, Kaleohano was free to leave. Before Officer Serle asked for consent, he told Kaleohano she was not under arrest and could refuse a

search and was free to leave. He asked for consent to search the vehicle because of his knowledge that she had been arrested for drug use before, a prior warrant was executed on her vehicle, her eyes were red and glassy, and there was no odor of liquor on her breath. Except for the third factor, his request was not based on any specific and articulable facts observed on that occasion. Even, however, as to the third factor, Officer Serle admitted that Defendant's driving that night "could be [because] she's too tired to operate a vehicle safely" and "weaving" "could also be a sign a person is tired" as Defendant had indicated. Hence, it was the officer's position that at no time was Kaleohano detained for the purpose of obtaining her consent to search the vehicle, as the majority would argue. *See* majority opinion at 380–81, 56 P.3d at 148–49.

In fact, the officer acknowledged that, inasmuch as he had *no* basis for arresting Defendant, *he could not detain her.* In that regard, he contended that Defendant herself could walk away from the scene and had she sought his aid in calling for a ride, he would have complied. Officer Serle's and the prosecution's stance had always been that Kaleohano was not detained, but was always free to leave. They realized what the majority fails either to comprehend or admit—that in order to sustain the validity of a consent to search, Defendant must have voluntarily waived her right against a warrantless search, and an invalid detention would vitiate such consent.

## V.

Officer Serle and the prosecution treated Kaleohano's consent as having a legal significance *independent* of the initial stop, as only they could have. Our jurisdiction has not, to this point, required that reasonable suspicion is necessary to sustain a request of a driver, following a traffic stop, to consent to a search of the vehicle. *Cf. State v. Carty,* 170 N.J. 632, 790 A.2d 903, 905 (2002) ("We hold that, in order for a consent to search a motor vehicle and its occupants to be valid, law enforcement personnel must have a reasonable and articulable suspicion of criminal wrongdoing prior to seeking consent to search a lawfully stopped motor vehicle.").

A consent to search is viewed as one of the exceptions to our constitutional requirement that a warrant be obtained prior to a search. *See State v. Hanson,* 97 Hawai'i 71, 76, 34 P.3d 1, 6 (2001) ("[C]onsent is an exception to and dispenses with the requirement of a warrant." (Citations omitted.)); *State v. Ganal,* 81 Hawai'i 358, 368, 917 P.2d 370, 380 (1996) ("[W]e have also recognized that the warrant requirement is subject to a few specifically established and well-delineated exceptions. One of the specific exceptions is a search conducted pursuant to consent." (Citations omitted.)); *State v. Kearns,* 75 Haw. 558, 570, 867 P.2d 903, 909 (1994) ("[W]e have recognized that the State may conduct an otherwise unconstitutional search if the person to be searched freely and voluntarily gives his or her consent." (Citation omitted.)). Officer Serle recognized this principle because, as he testified, had Defendant refused to consent to the search, he would have secured the vehicle and sought a warrant to search it.

## VI.

At the suppression hearing, the prosecution never argued there was reasonable suspicion to detain Defendant for drug impairment. Rather, its position throughout was that because the officer could not make a drug arrest, Defendant herself was always free to leave, but not in the car. As the prosecution emphasized, the officer "had *speculated* [Kaleohano] was impaired" but the officer "had no idea of why she was impaired" and "she could have been impaired because of what she said," that is, "she was tired." As the prosecution argued, the officer indicated that *prior* to asking for consent, Defendant was free to go and *when* he asked for consent Defendant was free to go. "*When he asked for consent,* he made it very clear that—he told Miss Kalehano [sic] that she was free to go, that she could leave *prior* to asking her for consent, and that he would like to have consent." Indeed, according to the prosecution, Defendant was free to leave until the point the drug paraphernalia was recovered, and as the prosecution empha-

sized "over and over and over again [the officer] said that." As the prosecution reiterated, "[n]o one tried to detain her or tell her she had to stay." (Emphasis added.)

What the majority conjures up as a detention supported by reasonable suspicion for the purpose of obtaining Kaleohano's consent to search simply did not exist. The prosecution's position at the hearing was to the contrary and the accurate rendition of its position must be set out in full:

[PROSECUTOR]:—everyone keeps throwing out this phrase, probable cause for a crime. *What crime?*

*This officer has no specialized training in drug identification or people impaired by drugs. This officer did not have any evidence of drugs other than* prior experience based on other people telling him that this individual had been stopped, her vehicle had been searched, and drugs had been found, and looking at an OBTS and prior evidence that drugs have been found.

The court knows that is not probable cause. That if he came for a search warrant, he would not be allowed to get a search warrant, because that's not probable cause. It's *speculation. All he had was speculation.* There is no probable cause.

*And if he had probable cause, for what crime? No one can even identify a crime at that point because there was no probable cause.* All he was doing was just following up where the information led him to. *When he asked for consent,* he made it very clear that—he told Miss Kalehano [sic] that she was free to go, that she could leave *prior* to asking her for consent, and that he would like to have consent.

THE COURT: Let me ask you. *Is not driving under the influence of drugs a crime?* Or is that a traffic offense?

[PROSECUTOR]: *He had no evidence of that, [Y]our Honor. He had no evidence that she was driving under the influence of drugs. He had speculation* that she was impaired, and that he did not feel it was safe for her to drive, *but he had no idea why she was impaired* .

*She could have been impaired because of what she said. She was tired. He did not know, and he did not have specialized training to identify factors of someone who's under* the influence of drugs.

He had specialized training in identifying somebody under the influence of alcohol, and he determined that she was not under the influence of alcohol. That's why he did not continue with a DUI liquor investigation.

*Once he spoke to her, he realized she didn't have slurred speech,* she did not have alcohol on her breath, that she was not intoxicated by alcohol, and that's all he's trained to identify. He is not trained to identify drugs.

So no, [Y]our Honor, *he could not have placed her under arrest for driving under the influence of drugs because he had* no training and he *had no understanding—* enough to place someone under arrest with that charge.

All he knew was that *he felt it was unsafe for her to drive.* He *did not know why she [sic] was unsafe to drive* and he did not have enough to charge her with any crime. The only thing that he wanted to do is *make sure she did not go back on* the road because of the way she was driving, and he said—the defense is trying to say, well, she would have been just forced to walk. No. He said he would offer her a ride if necessary. He would arrange for a ride.

If she had wanted to go somewhere, he would have arranged for a ride, but he just did not want her operating the vehicle.

THE COURT: Okay.

[PROSECUTOR]: And just one point on the grand jury examination. There was some questioning of him whether or not— what he said and whether or not it was part of whether or not when she was free to go, but at best that's impeachment testimony on whether or not he said that, and what—but it was never explained what he meant by that point.

But he repeatedly told this court on direct and cross-examination of both defense counsels [sic] that *defendant was free to go until the point that the pipe was*

*recovered. Over and over and over again he said that.*

. . . .

[PROSECUTOR]: . . . She's free to go. He told her she was free to go. *No one tried to detain her or tell her she had to stay.* She was free to leave. She gave no indication that she wanted to leave.

(Emphases added.) Thus, the prosecution's representations at the suppression hearing were that (1) the officer had no probable cause to arrest for any crime despite information of a prior drug seizure from the vehicle, (2) all the officer had with respect to whether drugs were present in the vehicle was "speculation," (3) based on what the officer knew, "he would not be allowed to get a search warrant," (4) when he asked for consent, Kaleohano was free to leave "prior to" the request and was "free to go," (5) the officer "had no evidence [Kaleohano] was driving under the influence of drugs" and only had "speculation," (6) indeed the officer had "no idea why [Kaleohano] was impaired" and it could be, as Kaleohano represented, that "she was tired," (7) the officer did not know whether Kaleohano was under the influence of drugs, and he did not have "specialized training" for such a determination,

(8) although he "felt it was unsafe for her to drive," he did "not know why she [sic] was unsafe to drive," (9) the officer testified "over and over and over again" that Kaleohano was free to leave, (10) "no one tried to detain her or tell her she had to stay." Plainly, "speculation" does not amount to "reasonable suspicion." [2]

## VII.

However the prosecution may characterize its position on appeal, it is bound by the theory it propounded before the trial court at the motion to suppress. The prosecution may not argue on appeal a different theory than it argued before the trial court as to why evidence should not be suppressed. *See State v. Rodrigues*, 67 Haw. 496, 498, 692 P.2d 1156, 1158 (1985) (holding that, on appeal, when seeking reversal of a court's granting of a motion to suppress, the State waived the argument that the exigent circumstances and good faith exceptions to the warrant requirement applied because "the State had never presented the issue[s] . . . to the trial court" and that "[i]t is a generally accepted rule that issues not raised at the trial level will not be considered on appeal" (citations omitted)).

[THE PROSECUTOR]: At that point I don't—when he asked her that question, *he was just doing—performing a traffic stop to make a determination whether she was capable of driving—*

THE COURT: I see.

[THE PROSECUTOR]:—the vehicle.

*I don't think—there is no evidence of drugs— no sufficient evidence to charge her with any drugs at that point anyway[.]*

(Emphases added.) The reality is that the prosecution believed it had to argue, in opposition to the motion to suppress Defendant's statements, that Defendant was not the focus of any investigation at the time Officer Serle asked her questions. *See State v. Kauhi*, 86 Hawai'i 195, 204, 948 P.2d 1036, 1045 (1997) ("While focus of the investigation upon the defendant, standing alone, will not trigger the application of the *Miranda* rule, it is an important factor in determining whether the defendant was subjected to custodial interrogation." (Quoting *State v. Melemai*, 64 Haw. 479, 481, 643 P.2d 541, 544 (1982).)). *It would have obviously been inconsistent for the prosecution to argue on the one hand that Defendant was not the focus of an investigation, and to contend, on the other hand, that she was detained because there was reasonable suspicion to believe criminal activity was afoot.*

---

2. The majority characterizes as unsupported my point that the prosecution did not argue that there was reasonable suspicion to detain Defendant for drug impairment. *See* majority opinion, 99 Hawai'i at 379 n. 13, 56 P.3d at 147 n. 13. This flies in the face of the prosecution's own arguments, evidenced in the lengthy passage from the transcript of proceedings outlined *supra*. Indeed, shortly after stating that Officer Serle believed there may be drugs in the vehicle, the prosecution argued that "there is no evidence of drugs[:]"

THE COURT: But at that point when—even at that point when the consent was obtained, was she not already asked whether she had anything to drink?

[THE PROSECUTOR]: She was asked before he asked for consent for the vehicle.

THE COURT: She said no.

[THE PROSECUTOR]: That's correct.

THE COURT: So these incidents of these facts—she did not have anything to drink and she said no, but even at that point was not that question incriminating in nature because the officer knew that she had a previous drug incident, her eyes were red, watery, driving was impaired?

*Had she not at that point become the focus of the investigation?*

The majority claims that "the record is replete with indications that all of the parties, either at the initial suppression hearing or at the hearing on the motion for reconsideration, attempted to have the court consider whether Officer Serle's continued detention of Kaleohano was supported by reasonable suspicion." Majority opinion, 99 Hawai'i at 374 n. 6, 56 P.3d at 142 n. 6. However, as previously demonstrated, the prosecution did not argue that Officer Serle had reasonable suspicion to detain Defendant, and the record is "replete" that the prosecution's fundamental stance was otherwise. *See supra* pages 385–86, 56 P.3d at 153–54 and note 2. The prosecution's position at the suppression hearing was (1) that the officer had only "speculation" as to whether Kaleohano was under the influence of drugs and as to whether drugs were in the vehicle, (2) that Kaleohano was not detained, and (3) that the searches were validated by her consent.

## VIII.

A warrantless search must be justified by some exception to the warrant requirement. *See State v. Jenkins,* 93 Hawai'i 87, 102, 997 P.2d 13, 28 (2000) ("Any warrantless search of a constitutionally protected area is presumptively unreasonable unless there is both probable cause and a legally recognized exception to the warrant requirement." (Internal quotation marks, brackets, and citations omitted.)). In the case of the consent exception, the prosecution bears the burden of establishing that the consent was freely and voluntarily given. *See State v. Trainor,* 83 Hawai'i 250, 261, 925 P.2d 818, 829 (1996) ("'It is well-settled that when the prosecution seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving ... that the consent was, in fact, freely and voluntarily given.'") (Quoting *State v. Patterson,* 58 Haw. 462, 468, 571 P.2d 745, 749 (1977).) (Ellipsis points in original.). "[W]hether a consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *State v. Merjil,* 65 Haw. 601, 605–06, 655 P.2d 864, 868 (1982) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (quotation marks omitted)).

The prosecution's theory at trial was that Defendant voluntarily consented to the search. The majority would remand the case because "the trial court made no specific findings as to voluntariness." Majority opinion, 99 Hawai'i at 381, 56 P.3d at 149. However, the burden was on the prosecution to prove Kaleohano voluntarily consented to the search. The prosecution's theory was based on consent and, thus, at the hearing and in argument it sought to establish that consent was freely and voluntarily given. Accordingly, the prosecution adduced the evidence it believed supported its case. It conceded that the evidence adduced did not rest on reasonable suspicion because all the officer had was "speculation" and in the officer's view, no detention took place. Kaleohano did not testify. Nothing more would be gained by a remand except to afford the prosecution the proverbial "second bite at the apple," inasmuch as it must carry the burden of proof.

## IX.

### A.

In my view, the record is sufficient upon which to rule. I believe the prosecution failed to carry its burden of proving that Kaleohano's consent was freely and voluntarily given. Although Officer Serle indicated to Kaleohano that she could refuse the search and was free to go, he advised her that if she did not consent to the search "the standard procedure was that [the police were] obligated to apply for a search warrant." According to the officer, after Kaleohano gave her oral consent, he had her remain in her vehicle until Officer Manaois arrived and she could sign a written consent form. It was after 11 o'clock at night. Not many cars were on the road. While the officer told Kaleohano she was free to go, he had decided she would not be allowed to leave in her car. The officer testified he would not have stopped Kaleohano if she walked away.

He admitted that although it was after 11 p.m., he would be willing to allow Kaleohano

to walk on the side of the road by herself. He would allow Kaleohano to do that to call for a ride. He would not stop Kaleohano, although he would not advise it. He did not know where Kaleohano lived. There is no indication in the record that these matters were communicated to Kaleohano. The officer testified that if Kaleohano wanted to leave and wanted help to find a ride he would have helped her. There is no indication in the record that this was told to Kaleohano.

### B.

The question is whether a reasonable person under these circumstances would believe he or she was free to leave. *See State v. Kauhi,* 86 Hawai'i 195, 203, 948 P.2d 1036, 1044 (1997) ("Generally, a person is 'seized' if, 'from an objective standpoint and given the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave.'" (Quoting *Trainor,* 83 Hawai'i at 256, 925 P.2d at 824.)); *Kearns,* 75 Haw. at 566, 867 P.2d at 907 ("[A] person is seized if, given the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave." (Citation omitted.)). An objective view of the record indicates that, although Officer Serle told Kaleohano she was free to go, she was told that if she refused consent to the search, the standard procedure was to obtain a search warrant for her vehicle.

While Kaleohano may have been able to leave on foot, she was informed she could not drive away. It was after 11 p.m. and there were few cars on the road. Although Officer Serle harbored the thought that she could walk alongside of the road on the way to call for a ride, he would not have advised such a course. If this were apparent to Officer Serle, it is not unreasonable to infer that the inadvisability of this option was also manifest to Kaleohano. *If he was asked,* the officer would have helped her get a ride, but there is no indication this was communicated to Kaleohano. Objectively considering the circumstances from a reasonable person's viewpoint in Kaleohano's position, there was no realistic way for her to leave. That option was not a viable one. A reasonable person would not believe that he or she was free to leave under

the foregoing circumstances. Therefore, the prosecution failed to prove that Kaleohano's consent was freely and voluntarily given.

### X.

The majority contends that this opinion "attempts to usurp the role of the fact finder." Majority opinion, 99 Hawai'i at 381, 56 P.3d at 149. However, it is well-settled that "'[a]n appellate court may affirm a judgment of the lower court on any ground in the record that supports affirmance.'" *State v. Dow,* 96 Hawai'i 320, 326, 30 P.3d 926, 932 (2001) (quoting *State v. Ross,* 89 Hawai'i 371, 378 n. 4, 974 P.2d 11, 18 n. 4 (1998) (other citation omitted)); *see also State v. Rapoza,* 95 Hawai'i 321, 323, 22 P.3d 968, 970 (2001) ("An appellate court may affirm a judgment of the lower court on any ground in the record that supports affirmance."); *State v. Pinero,* 75 Haw. 282, 290, 859 P.2d 1369, 1374 (1993) (stating that "where decision below was correct, it may be affirmed by appellate court even though [trial court] gave wrong reason for its action" (citing *State v. Taniguchi,* 72 Haw. 235, 240, 815 P.2d 24, 26 (1991))); *State v. Rodrigues,* 68 Haw. 124, 134, 706 P.2d 1293, 1300 (1985) ("[W]here the decision below is correct it must be affirmed by the appellate court though the lower tribunal gave a wrong reason for its action."). The record in the instant case suffices to affirm the court's order.

Remanding this case will not accomplish anything more than what we can achieve at this level of the proceedings. I take judicial notice of the fact that The Honorable Artemio Baxa, the judge in this case, retired, effective December 28, 2001. Thus, remanding this case for a determination of whether Defendant's consent was voluntary would accomplish nothing. If on remand any judge were to consider the record as it now stands, he or she would not be in any better position than we are now to address the issues. Therefore, this court would not "usurp the role of the fact finder[,]" majority opinion at 381, 56 P.3d at 149, in rendering a decision on the voluntariness of Defendant's consent.

## XI.

Accordingly, I would sustain the court's order but on the grounds set forth herein.