118 P.3d 652

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Jonathan H. ADLER, Defendant–Appellant.**

**No. 25224.**

Supreme Court of Hawai'i.

Aug. 18, 2005.

Michael A. Glenn, on the briefs, for defendant-appellant.

Kevin S. Hashizaki, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by MOON, C.J.

Defendant-appellant Jonathan Adler appeals from the September 10, 2002 judgment of conviction and sentence of the Circuit Court of the Third Circuit, the Honorable Greg K. Nakamura presiding, adjudicating him guilty of and sentencing him for commercial promotion of marijuana[1] in the sec-

1. Hawai'i Revised Statutes (HRS) § 712–1240 (1993) provides in pertinent part:

"Marijuana" means any part of the plant (genus) cannabis, whether growing or not, including the seeds and the resin, and every

ond degree, in violation of HRS § 712–1249.5(1)(c) (1993) [2] and prohibited acts relating to drug paraphernalia, in violation of HRS § 329–43.5(a) (1993).[3] On appeal, Adler claims that the trial court erred in denying his motion to dismiss because (1) HRS § 712–1240.1 (1993) [4] conclusively established a defense to the commercial promotion of marijuana charge and (2) the prosecution failed to present clearly exculpatory evidence to the grand jury. Adler also claims that the trial court erred in finding him guilty as charged because: (1) HRS § 712–1249.5 unconstitutionally burdened the free exercise of his religion; (2) the testimony of one of the prosecution's witnesses regarding the dangerous effects of marijuana was irrelevant and unreliable; (3) HRS § 712–1249.5 unconstitutionally infringed on his right to privacy; and (4) HRS § 329–43.5 may be applied in an unconstitutional manner. For the following reasons, we affirm the trial court's judgment of conviction and sentence.

## I. BACKGROUND

On August 26, 1998, Hawai'i County Police Department officers executed a warrant to search Adler's residence. Police officers seized 82 marijuana plants ranging from one to four-and-one-half feet tall, and seven marijuana seedlings from Adler's residence. Police also seized four pipes used for smoking marijuana and thirty-four plastic pots and bags used to grow the marijuana. Based on

> alkaloid, salt, derivative, preparation, compound, or mixture of the plant, its seeds or resin, except that, as used herein, "marijuana" does not include hashish, tetrahydrocannabinol, and any alkaloid, salt, derivative, preparation, compound, or mixture, whether natural or synthesized, of tetrahydrocannabinol.

The trial court and the parties use the terms "marijuana" and "cannabis" interchangeably throughout the proceedings.

2. HRS § 712–1249.5(1)(c) provides that "[a] person commits the offense of commercial promotion of marijuana in the second degree if the person knowingly ... [p]ossesses, cultivates, or has under the person's control fifty or more marijuana plants[.]"

3. HRS § 329–43.5(a) provides:

> It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest,

the items seized, the prosecution filed an indictment on September 30, 1999 alleging that Adler committed one count of commercial promotion of marijuana in the second degree, in violation of HRS § 712–1249.5(1)(c), and one count of prohibited acts relating to drug paraphernalia, in violation of HRS § 329–43.5(a).

### A. Motion to Dismiss

On December 21, 1999, Adler filed a motion to dismiss the charges against him, arguing that (1) HRS § 712–1240.1 provided a complete defense to the commercial promotion charge and (2) the prosecution deliberately excluded clearly exculpatory evidence from the grand jury.

After a hearing on February 7, 2000, the trial court denied Alder's motion. The trial court filed its findings of fact, conclusions of law, and order on March 7, 2000, which included the following:

### FINDINGS OF FACT

....

2. That on or about June 21, 1999, [Adler] hand delivered the following two documents to the Hawai'i County Prosecutor's Office:

> a. A document entitled "Hawai'i Medical Marijuana Institute." This document contained a "Doctor's Verification Form" from Dr. Daniel Susott and a one page attachment.

> manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

4. HRS § 712–1240.1 provides:

> It is a defense to prosecution for any offense defined in this part that the person who possessed or distributed the dangerous, harmful, or detrimental drug did so under authority of law as a practitioner, as an ultimate user of the drug pursuant to a lawful prescription, or as a person otherwise authorized by law.

b. A Document entitled "California Compassionate Use Act of 1996 Health and Safety Code Section 11326.5." This document contained a "Physician's Statement" from Dr. Tod H. Mikuriya.

3. During the grand jury proceedings of September 9, 1999, [the] Deputy Prosecuting Attorney ... did not present the documents received by the Hawai'i County Prosecutor's Office from [Adler].

4. During the grand jury proceedings of September 9, 1999, [the] Deputy Prosecuting Attorney ... did not present evidence concerning the medicinal use of marijuana.

### CONCLUSIONS OF LAW

1. HRS Sec. 712–1240.1 entitled "Defense to Promoting" is not applicable to the instant case. HRS Sec. 712–1240.1 only provides a defense to a person authorized to possess a drug under Hawai'i law.

2. The California Health and Safety Code 11362.5 does not provide for nor authorize the medical prescription of marijuana.

3. Instead, the California Code provision provides a defense to a criminal charge of marijuana possession or marijuana cultivation under California law.

4. The California Code provision, therefore, provides a defense to offenses charged under California law and does not permit the medical use of marijuana in jurisdictions other than California.

5. Even if the California Code provision applied as a defense under Hawai'i law, its application in a specific case is a question of fact for the finder of fact. It is not a proper subject for a motion to dismiss.

6. The documents presented to the Hawai'i County Prosecutor's Office on June 21, 1999, and evidence of medicinal use of marijuana were not clearly exculpatory and therefore, did not have to be presented to the grand jury.

### B. *Jury Trial*

After a jury trial commencing on August 21, 2001, the jury entered verdicts finding Adler guilty of commercial promotion of marijuana in the second degree and prohibited acts relating to drug paraphernalia. However, the jury was unable to reach a decision as to whether (1) "in committing the offense[s] the defendant was motivated by a legitimate and sincerely held religious belief" and (2) "defendant's act[s] in committing the offense was an integral part of his religious faith and the governmental prohibition of the act results in a virtual inhibition of defendant's religion or the practice of the faith." Based on the jury's inability to reach a unanimous decision regarding the alleged infringement on the free exercise of Adler's religion, the trial court declared a mistrial.

### C. *Bench Trial*

On December 24, 2001, the parties stipulated to the following:

1. On or about August 26, 1998, in the County and State of Hawai'i, Defendant knowingly had in his possession and was cultivating 89 cannabis plants, seven of which were seedlings;

2. Defendant also knowingly possessed 4 pipes used for smoking cannabis, and 34 various plastic pots and bags to grow the cannabis;

3. Defendant is a Reverend in the Religion of Jesus Church;

4. The Religion of Jesus Church is a legitimate religion;

5. Defendant has received a license to perform marriage ceremonies from the State of Hawai'i;

6. Defendant is sincere in his religious convictions concerning the use of cannabis;

7. Defendant sincerely believes that his religion mandates the sacramental use of cannabis;

8. The question of law as to whether the State of Hawai'i has a compelling interest in prohibiting Defendant's use and cultivation of cannabis which outweighs Defendant's rights [sic] to freely exercise his religion under Article I, Section Four of the Hawai'i State Constitution, shall be decided at a jury-waived trial before this Honorable Court.

Adler filed a written waiver of his right to a jury trial on December 27, 2001.

A bench trial was conducted on January 24, 2002. The trial court admitted into evidence, by stipulation of the parties, all exhibits received during the prior jury trial. Tonia Canoso, a behavioral health therapist and director of substance abuse programs with the Waianae Coast Comprehensive Health Center, and Keith Kamita, administrator of the State Narcotic Enforcement Division, Department of Public Safety, testified for the prosecution.

William Wenner, M.D. and Adler testified for the defense. Adler and his counsel had the following exchange regarding the burden to the exercise of his religion:

Q. [By defense counsel] And does the State's prohibition of your possession and cultivation of cannabis severely burden the free exercise of your religion

A. [By Adler] Yes, it does.

. . . .

Q. Yes, it does?

A. Yes, it does.

Q. How so?

A. In burdening my religion [sic] by prohibiting my use of cannabis, whether it be cultivation, the sacred practice of growing the holy herb, or use, the sacred part of our church's tradition to consume the holy herb in remembrance of Christ Jesus and our Father in heaven, and also in the possession of the sacrament for use amongst members of the church. It would basically eliminate my church as it's—as it's in its current form today.

Q. And why would your church be eliminated if it wasn't allowed to consume or cultivate cannabis?

A. We have always used of [sic] cannabis for spiritual purposes that include prayer, to getting in contact with god, and offer our requests, ideas, and sharing with god in the sanctity of our mind and verbally. We have used it for worship to extol the virtues of the plant that god has given us and how it has helped us in our daily life and opened us up to spiritual receptively [sic].

We also use it for our healing ministry to not only relieve the stress of the physical world and day-to-day life, but to open up the healing powers of faith healing that can be accomplished through the use of the holy herb.

Q. I need to understand one thing, though, [Adler], can't you have your religious beliefs and think everything you want about God and Jesus without consuming cannabis?

A. Not in this church.

Q. Okay. What would happen if the State's insistence on prohibiting you from possessing marijuana for religious purposes were allowed to stand? What would happen to the Religion of Jesus Church, East Hawai'i Branch, in your opinion as the reverend?

A. My opinion is that it would cease to exist.

Q. Thank you.

The trial court ordered the parties to submit written closing arguments one month after the transcripts from the bench trial and portions of the jury trial were completed. Closing arguments were filed by Adler and the prosecution on May 28, 2002 and June 6, 2002, respectively.

The trial court filed its findings of fact, conclusions of law, and order on June 20, 2002. The trial court found, *inter alia:*

7. On or about August 26, 1998, Defendant was a reverend in the Religion of Jesus Church. At that time, the Religion of Jesus Church was a legitimate religion, Defendant had received a license to perform marriage ceremonies from the State of Hawai'i, Defendant sincerely believed his religion convictions [sic] concerning the use of marijuana or cannabis, and Defendant sincerely believed that his religion mandated the sacramental use of marijuana or cannabis.

8. "Marijuana" is a Schedule I drug under Section 329–[1]4(d)(20) (1997) of the Hawai'i Revised Statutes ("HRS").

9. Under HRS § 329–13:

[a] substance shall be placed in Schedule I if it has the highest degree of danger or probable danger according to

the determination made pursuant to section 329–11.

. . . .

12. Therefore, the Hawai'i State Legislature has determined that marijuana or cannabis has the highest degree of danger or probable danger pursuant to the criteria set forth in HRS § 329–1(a) and the State of Hawai'i has a compelling state interest in prohibiting the possession of marijuana or cannabis or the cultivation or marijuana or cannabis plants.

13. In order to comply with Defendant's East Hawai'i Branch of the Religion of Jesus Church protocol, it is required that a member smoke or consume marijuana "at least once a year to honor and respect Jesus," usually on August 21st, which is believed to be Jesus' birthday. [Tr., August 27, 2001, P. 62, 65.]

(Brackets in original.) Based on its findings, the trial court concluded that the prosecution had proven the elements of both commercial promotion of marijuana in the second degree and prohibited acts relating to drug paraphernalia beyond a reasonable doubt. With respect to the alleged interference with Adler's free exercise of his religion, the trial court concluded, *inter alia:*

5. Defendant has failed to prove by even a preponderance of the evidence that the Commercial Promotion in the Second Degree charge creates a virtual inhibition of the religion or the practice of the faith. Defendant's religion requires that at a minimum he use marijuana or cannabis once a year. Defendant has not shown by even a preponderance of the evidence that this use requires possession or cultivation of 50 or more marijuana plants.

6. Defendant has failed to prove by even a preponderance of the evidence that the regulation provided in the Prohibited Acts Related to Drug Paraphernalia creates a virtual inhibition of the religion or practice of the faith. Defendant's religion requires that at a minimum he use marijuana or cannabis once a year. Defendant has not shown by even a preponderance of the evidence that this use requires possession of more than one pipe for consumption of marijuana.

7. The State of Hawai'i has a compelling state interest in enforcing the Commercial Promotion of Marijuana in the Second Degree statute and the Prohibited Acts Related to Drug Paraphernalia statutes as they relate to marijuana.

8. Defendant is to be adjudicated as guilty of the offense of Commercial Promotion of Marijuana in the Second Degree as charged in Count I of the Indictment.

9. Defendant is to be adjudicated as guilty of the offense of Prohibited Acts Related to Drug Paraphernalia as charged in Count II of the Indictment.

The trial court sentenced Adler to a five-year term of probation and assessed a $100.00 Crime Victim Compensation Fee, and Adler timely appealed.

## II. STANDARDS OF REVIEW

### A. Conclusions of Law

■ A trial court's conclusions of law are reviewed *de novo* under the right/wrong standard. *State v. Ah Loo,* 94 Hawai'i 207, 209, 10 P.3d 728, 730, *reconsideration denied,* 94 Hawai'i 207, 10 P.3d 728 (2000).

### B. Questions of Constitutional Law

■ This court answers questions of constitutional law *de novo,* exercising its own independent judgment based on the facts of the case. *Id.*

## III. DISCUSSION

### A. Motion to Dismiss

Adler contends that the trial court erred in denying his motion to dismiss. Adler argues that documents he submitted in support of his motion clearly demonstrated that HRS § 712–1240.1 was applicable in the instant case and negated his guilt of the offense of commercial promotion of marijuana in the second degree.

■ As noted *supra,* HRS § 712–1240.1 provides:

It is a defense to prosecution for any offense defined in this part that the person who possessed or distributed the dangerous, harmful, or detrimental drug did so

under authority of law as a practitioner, *as an ultimate user of the drug pursuant to a lawful prescription, or as a person otherwise authorized by law.*

(Emphasis added.)[5] Additionally, when a defendant alleges that the prosecution has improperly withheld evidence from the grand jury, this court "has concluded a court should dismiss an indictment only when the prosecutor failed to present evidence that clearly would have negated guilt or presented evidence that would undermine[ ] the authority of the grand jury to act at all[.]" *State v. Wong*, 97 Hawai'i 512, 526, 40 P.3d 914, 928 (2002) (citations and quotation marks omitted) (brackets in original). Thus, this court must determine whether the documents presented in support of his motion to dismiss clearly established that he possessed marijuana "pursuant to a lawful prescription" or was "otherwise authorized by law" to possess the controlled substance.

### 1. "pursuant to a lawful prescription"

 Adler claims on appeal that a "licensed California doctor pursuant to California law prescribed Reverend Adler cannabis. Furthermore, a licensed Hawai'i doctor also prescribed Rev. Adler Cannabis [sic]." Adler, however, is barred from raising this argument by the doctrine of judicial estoppel.

Pursuant to the doctrine of judicial estoppel,

> [a] party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his action.
>
> Judicial estoppel " 'partakes . . . of positive rules of procedure based on manifest justice and, to a greater or less[er]

degree, on considerations of the orderliness, regularity, and expedition of litigation.' " This doctrine prevents parties from "playing 'fast and loose' with the court or blowing 'hot and cold' during the course of litigation."

*Roxas v. Marcos*, 89 Hawai'i 91, 124, 969 P.2d 1209, 1242 (1998) (citations omitted), *reconsideration denied*, 89 Hawai'i 91, 969 P.2d 1209 (1998).

During the hearing on Adler's motion to dismiss, he conceded that, because "marijuana is a Schedule I drug that cannot be prescribed, there can be no prescription of marijuana. Technically that cannot happen." He explained, "That's why we used the word 'recommendation' in California, Your Honor. As I mentioned, you cannot prescribe a Schedule I substance. So what the laws have done is make it under a doctor's recommendation, then it shall be a defense, and you're allowed lawfully to possess it." Both the trial court and the prosecution were entitled to rely on the defense's concession that he could not have legal prescription of marijuana. Thus, for this court to examine whether Adler possessed the marijuana pursuant to a lawful prescription would prejudice the trial court and the prosecution because neither addressed this argument during the hearing on Adler's motion to dismiss. Accordingly, we hold that Adler is judicially estopped from raising this argument on appeal.

### 2. "otherwise authorized by law"

 Adler contends that he was "otherwise authorized by law" to possess marijuana under HRS § 712–1240.1. Adler argues that, based on the Full Faith and Credit Clause of the United States Constitution, the trial court was obligated to recognize his authority to possess marijuana under California Health

---

5. HRS § 712–1240.1 was subsequently amended, effective June 14, 2000, to include the following:

It is an affirmative defense to prosecution for any marijuana-related offense defined in this part that the person who possessed or distributed the marijuana was authorized to possess or distribute the marijuana for medical purposes pursuant to part IX of chapter 329.

*See* 2000 Haw. Sess. L. Act 228 §§ 4, 9 at 600. Act 228 also states, "This Act shall not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date." *Id.* § 5 at 600. In the instant case, Adler was indicted on September 30, 1999, before the June 14, 2000 effective date of Act 228.

and Safety Code § 11362.5 (1996) [hereinafter Section 11362.5].

■ Section 11362.5 provides:

(a) This section shall be known and may be cited as the Compassionate Use Act of 1996.

(b)(1) The people of the State of California hereby find and declare that the purposes of the Compassionate Use Act of 1996 are as follows:

(A) *To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes* where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief.

(B) To ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction.

(C) To encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana.

(2) Nothing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes.

(c) Notwithstanding any other provision of law, no physician in this state shall be punished, or denied any right or privilege, for having recommended marijuana to a patient for medical purposes.

(d) *Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possess or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician.*

(e) For the purposes of this section, "primary caregiver" means the individual designated by the person exempted under this section who has consistently assumed responsibility for the housing, health, or safety of that person.

(Emphases added.) In interpreting Section 11362.5, the Supreme Court of California has held that

a grant of limited immunity from prosecution also must properly be found in section 11362.5(d), which provides that sections 11357 and 11358 "shall not apply to" qualified patients and primary caregivers (§ 11362.5(d)), particularly in view of its purpose of prohibiting "criminal prosecution [and] sanction" of such qualified patients and primary caregivers for such crimes (§ 11362.5., subd. (b)(1)(B)).

*People v. Mower,* 28 Cal.4th 457, 122 Cal. Rptr.2d 326, 49 P.3d 1067, 1076 (2002) (quotations marks and brackets in original). Both the plain language of the statute and its interpretation by the Supreme Court of California indicate that Section 11362.5 does not grant persons a right to possess marijuana. Rather, the California law grants certain qualified persons immunity from prosecution under California Health and Safety Code §§ 11357 or 11358.

In the instant case, Adler was not prosecuted under the California Health and Safety Code, and nothing in Section 11362.5 prohibits prosecution under applicable Hawai'i law. Thus, Section 11362.5 did not authorize Adler to possess or cultivate fifty or more marijuana plants in violation of HRS § 712–1249.5. Therefore, the trial court did not err in concluding that (1) HRS § 712–1240.1 was inapplicable in the instant case and (2) the documents submitted in support of Adler's motion to dismiss were not clearly exculpatory. Accordingly, we hold that the trial court did not err in denying Adler's motion to dismiss.

### B. *Trial Proceedings*

### 1. Alleged Infringement on Free Exercise of Religion

■ Adler contends that the trial court erred in ruling that the prohibition on possessing or cultivating fifty or more marijuana

plants did not unconstitutionally burden the free exercise of his religion. Adler argues that the prosecution failed to demonstrate: (1) a compelling state interest; (2) "that total prohibition is the least restrictive means of achieving the State's goals," and (3) that the "free exercise of [Adler's] religion is not burdened by the State's prohibition of [marijuana]."

 "[T]his court has consistently held that every enactment of the legislature is presumptively constitutional, and a party challenging the statute has the burden of showing unconstitutionality beyond a reasonable doubt. The infraction should be plain, clear, manifest, and unmistakable." *Korean Buddhist Dae Won Sa Temple of Hawai'i v. Sullivan,* 87 Hawai'i 217, 247–48, 953 P.2d 1315, 1345–46 (1998) (quoting *State v. Gaylord,* 78 Hawai'i 127, 137, 890 P.2d 1167, 1177 (1995)).

In order to find an unconstitutional infringement on Appellants' religious practices,

> it [is] necessary to examine whether or not the activity interfered with by the state was motivated by and rooted in a legitimate and sincerely held religious belief, whether or not the parties' free exercise of religion had been burdened by the regulation, the extent or impact of the regulation on the parties' religious practices, and whether or not the state had a compelling interest in the regulation which justified such a burden.

Moreover, the United States Supreme Court has "long recognized a distinction between the freedom of individual belief, which is absolute, and the freedom of individual conduct, which is not absolute."

> . . . .

> As a preliminary matter, "it is necessary in a free exercise case for one to show the coercive effect of the [law] as it operates against him in the practice of his religion". . . .

> . . . Appellants assert an infringement on their religious practices. In order to demonstrate the coercive effect of the [government action], Appellants must show a "substantial burden" on religious interests.

*Dedman v. Bd. of Land & Natural Res.,* 69 Haw. 255, 260–61, 740 P.2d 28, 32–33 (1987) (citations and footnotes omitted) (some brackets in original and some added), *cert. denied,* 485 U.S. 1020, 108 S.Ct. 1573, 99 L.Ed.2d 888 (1988).

In the instant case, the parties stipulated that, when Adler knowingly had in his possession and was cultivating 89 marijuana plants, he "sincerely believed his religious convictions concerning the use of marijuana or cannabis, and [Adler] sincerely believed that his religion mandated the sacramental use of marijuana or cannabis." Thus, Adler was only required to demonstrate whether his free exercise of religion had been burdened by HRS § 712–1249.5, the extent or impact of the regulation on his religious practices, and whether or not the state had a compelling interest in the regulation to justify any burden on his religious practices.

With respect to the alleged burden on Adler's free exercise of religion, the trial court found:

> [Adler] has failed to prove by even a preponderance of the evidence that the Commercial Promotion in the Second Degree charge creates a virtual inhibition of [Adler's] religion or the practice of [his] faith. [Adler's] religion requires that at a minimum he use marijuana or cannabis once a year. [Adler] has not shown by even a preponderance of the evidence that this use requires possession or cultivation of 50 or more marijuana plants.

Adler argues that the prosecution "presented absolutely zero evidence that Reverend Adler's free exercise of his religion is not burdened by the State's prohibition of [marijuana]," and that the "uncontroverted testimony of Reverend Adler is that his religion can not exist without the consumption of his sacred sacrament [marijuana]." However, as noted *supra* Adler bore the burden to refute the presumption that HRS § 712–1249.5 was constitutional. *See Korean Buddhist Dae Won Sa Temple of Hawai'i,* 87 Hawai'i at 247–48, 953 P.2d at 1345–46. On appeal, Adler fails to cite any evidence in the record

establishing: (1) that the trial court's finding that Adler's religion only required its members to smoke or consume marijuana at least once a year was clearly erroneous; (2) the quantity of marijuana required to be smoked or consumed by his religion; or (3) how the prohibition on possessing or cultivating 50 or more marijuana plants burdens the free exercise of his religion. Inasmuch as the "appellant bears the burden to show error by reference to matters in the record," *State v. Hoang*, 93 Hawai'i 333, 334, 3 P.3d 499, 500 (2000), and "[t]his court is not obligated to sift through the voluminous record to verify an appellant's inadequately documented contentions," *Lanai Co. v. Land Use Comm'n*, 105 Hawai'i 296, 309 n. 31, 97 P.3d 372, 385 n. 31 (2004) (citation omitted), we hold that Adler has failed to establish that the trial court clearly erred in finding that Adler did not demonstrate that his religion required possession or cultivation of 50 or more marijuana plants.

Inasmuch as Adler falls short of establishing a substantial burden of his free exercise of religion, this court need not evaluate (1) whether the State has a compelling interest in prohibiting the possession or cultivation of 50 or more marijuana plants or (2) Adler's somewhat disingenuous argument that HRS § 712–1249.5 constitutes a total prohibition on the consumption of marijuana. *See Korean Buddhist Dae Won Sa Temple of Hawai'i*, 87 Hawai'i at 249, 953 P.2d at 1347. Accordingly, we hold that the trial court did not err in concluding that Adler failed to prove that HRS § 712–1249.5 unconstitutionally burdened the free exercise of his religion.

#### 2. The Testimony of Tonia Canoso

■ Adler contends that the trial court erred by failing to strike Canoso's testimony on behalf of the prosecution. Adler argues that Canoso's testimony was unreliable and irrelevant because: (1) Canoso testified that it was possible to consume marijuana without problems; (2) Canoso indicated that marijuana can be beneficial in treating or alleviating certain illnesses; (3) the majority of people counseled by Canoso abused multiple controlled substances; and (4) Canoso failed to provide any support for her testimony.

Assuming, *arguendo,* that the trial court erred in admitting Canoso's testimony, such an error would be harmless beyond a reasonable doubt. The stipulation entered by the parties established (1) all of the elements of the offenses charged and (2) that the only issue for the trial court was "whether the State of Hawai'i has a compelling interest in prohibiting [Adler's] use and cultivation of cannabis which outweighs [Adler's] rights [sic] to freely exercise his religion under Article I, Section Four of the Hawai'i State Constitution." Canoso's testimony focused on her experience with marijuana abusers and was intended to prove that the State had a compelling interest in prohibiting the possession and cultivation of fifty or more marijuana plants. However, inasmuch as Adler failed to demonstrate that HRS § 712–1249.5 unduly burdened the free exercise of his religion, this court need not consider whether the offense of commercial promotion of marijuana is supported by a compelling state interest. *Korean Buddhist Dae Won Sa Temple of Hawai'i*, 87 Hawai'i at 249, 953 P.2d at 1347. Therefore, we hold that the admission of Canoso's testimony did not constitute reversible error.

#### 3. Alleged Violation of Right to Privacy

■ In the argument section of his brief, Adler asserts that HRS § 712–1249.5 infringes upon his right to privacy. Initially, Adler fails to raise this point in his statement of points of error, in violation of Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) (2000) (which provides, *inter alia,* that each point of error state "the alleged error committed by the court . . .; [ ] where in the record the alleged error occurred; and [ ] where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court. . . ."). Thus, this court may disregard this argument on appeal. Additionally, Adler fails to indicate where he raised before the trial court the alleged unconstitutional infringement on his right to privacy. Moreover, during the hearing on the prosecution's motion to preclude the defense from raising

undisclosed evidence or defenses at trial, Adler's counsel represented to the trial court:

> I believe I've spoken with [the prosecutor's office] prior to the Court's coming in today, and they do understand that they've received our religious defense. And it was laid out in the cite of the case of *[State v. ]Blake,* [5 Haw.App. 411, 695 P.2d 336 (1985),] and that is our only defense.
>
> So we have no problem being precluded from raising undisclosed defenses as long as the Court understands we do plan on using the, um, infringement on his religious practices defense.

Based on the foregoing, Adler has waived this argument.

**4. Alleged Overbreadth of HRS § 329–43.5**

 Adler contends that HRS § 329–43.5 is unconstitutionally overbroad because it "allows the State of Hawai'i to bring felony charges for possessing misdemeanor quantities of cannabis by charging a class C felony for the container that the cannabis is held or grown in."

With respect to claims of overbreadth,

> [t]his court ... explained that a defendant who raises an overbreadth claim must establish that he or she is personally affected:
>
> > "The doctrine of overbreadth, although closely related to a vagueness claim, is distinct in that while a statute may be clear and precise in its terms, it may sweep so broadly that constitutionally protected conduct is included in its proscriptions." As an element of its overbreadth analysis, this court has consistently applied the principle that one who alleges that a statute is unconstitutionally overbroad, other than a statute affecting the freedom of expression, must be directly affected by the claimed overbroad aspects. Put differently, a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may conceivably be applied unconstitutionally to others.

*State v. Bui,* 104 Hawai'i 462, 465, 92 P.3d 471, 474 (2004) (quoting *State v. Kane,* 87

Hawai'i 71, 951 P.2d 934 (1998)) (emphasis and internal citations omitted).

Assuming, *arguendo,* that the situation articulated by Adler states a prima facie claim of overbreadth, in the instant case, Adler did not merely possess a misdemeanor quantity of marijuana. By his own admission, Adler possessed or cultivated a quantity of marijuana punishable as a class B felony. Thus, Adler was not directly affected by the aspects of HRS § 329–43.5 that he claims are overbroad. Therefore, Adler lacks standing to assert this claim.

### IV. CONCLUSION

Based on the foregoing, we affirm the judgment of conviction and sentence of the third circuit court.

