Concurring and Dissenting Opinion by
RECKTENWALD, C.J.,
In which NAKAYAMA, J., Joins.
I concur with the Majority’s holding that the jury instruction was erroneous and misleading insofar as it stated that Defendant Eugene Paris Jr. “may be deemed to be in custody” when released on furlough. I would hold that Paris is entitled to a new trial on this basis. Respectfully, I dissent from the Majority’s conclusion regarding the sufficiency of the evidence. Based on the testimony presented at Paris’s trial, there was sufficient evidence to support his conviction of escape in the second degree under Hawaii Revised Statutes (HRS) § 710-1021 (1984).[1]
When reviewing the sufficiency of evidence on appeal, we apply the following deferential standard of review:
[Ejvidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.
State v. Kalaola, 124 Hawai'i 43, 49, 237 P.3d 1109, 1115 (2010) (quoting State v. Richie, 88 *266 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998)) (brackets in the original) (emphases added).
“ ‘Substantial evidence’ as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.” Kalaola, 124 Hawai'i at 49, 237 P.3d at 1115 (citation omitted).
Here, in order to convict Paris of escape in the second degree, the State was inquired to prove beyond a reasonable doubt that (1) Paris “intentionally escape[d]” and (2) Paris escaped “from a correctional or detention facility or from custody.” HRS § 710-1021. The jury determined that the State satisfied this burden, and the witness testimony, when viewed in “the strongest light for the prosecution,” provides substantial evidence to support the jury’s conclusion. Kalaola, 124 Hawai'i at 49, 237 P.3d at 1115.
First, Paris’s case manager Noel Villa-nueva testified that he explained to Pains that, as a condition of furlough, Paris was required to return to Laumaka Work Furlough Center when directed by Villanueva or when his furlough pass expired. Specifically, Villanueva testified that Paris read the following section of his furlough agreement:
[Villanueva]: Number 9, I understand and agree that I shall be processed as an escapee if I fall into one or more of the following stipulations.
[[Image here]]
In letter A, fail to return to Laumaka Work Furlough Center at the designated day and time as stated in this agreement or any pass or fail to seek permission for an extension of the designated return time.
[[Image here]]
9B, fail to return to Laumaka or OCCC, Oahu Community Correctional Center, in a timely manner when I am directed to do so regardless of the expiration time stated on the pass.
Villanueva further testified that he explained this section to Paris:
[Prosecutor]: And, Mr. Villanueva, how did you explain that term to the defendant?
[Villanueva]: Regardless if he is working at that moment—like, for example, if he worked in that—at that moment, if I tell him to come back to Laumaka right away, I give him enough time, like two hours to come back, he has to come back.
[Prosecutor]: And did the defendant acknowledge that he understood he would be considered an escapee if he did not return in a timely manner when you directed him to do so?
[Villanueva]: Yes, sir.
With the extended furlough agreement, Villanueva testified that Paris was required to return to Laumaka every Wednesday upon the expiration of his weekly furlough pass. Further, Villanueva explained to Paris that the terms of the original furlough agreement were still in effect. He testified that Paris signed both the furlough agreement and the extended furlough agreement.
Villanueva then testified that Paris failed to return to Laumaka on Wednesday, January 11, 2012, as required by his pass, and did not “report to Laumaka at any time between January 11, 2012, and February 2nd, 2012[.]” Officer Waldron Chung then testified that he pulled Paris over on February 2, 2012, and that Paris told Officer Chung that his name was “John J. Rivera.”
Thus, there was sufficient evidence that Paris acted intentionally when he failed to return to Laumaka. See State v. Batson, 73 Haw. 236, 254, 831 P.2d 924, 934 (1992) (“[T]he mind of an alleged offender may be read from his acts, conduct and inferences fairly from drawn from all the circumstances.”) (citations omitted).
Second, there was substantial evidence to support the jury’s conclusion that Laumaka was “a correctional ... facility” or that Paris was in “custody” under HRS § 710-1021. Villanueva explicitly testified that Laumaka is “a correctional facility” and is “part of Oahu Community Correctional Center,” which is sufficient evidence that Lau-maka was a correctional facility. Moreover, there was sufficient evidence that, by failing to return to Laumaka, Paris escaped from custody under the applicable statutory definition. See HRS § 710-1000 (defining “cus *267 tody” as “restraint by a public servant pursuant to ... order of a court”). Villanueva testified that Paris was an “inmate” who was “incarcerated with the Department of Public Safety” and that Paris’s “sentence” would be completed within a few years. The jury could have reasonably inferred that Paris’s incarceration was ordered by a court. See State v. Dow, 96 Hawai'i 320, 324, 30 P.3d 926, 930 (2001) (when assessing the sufficiency of the evidence, the court looks at “the testimony at trial[ ] and any justifiable inferences that may be drawn therefrom”). Further, Villanueva testified that he was an employee of the State of Hawaii’s Department of Public Safety, and that he “work[ed] at Oahu Community Correction Center, at Laumaka Work Furlough.” Thus, a jury could reasonably conclude that he was a “public servant” who restrained Paris pursuant to an order of the court.
Giving “full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact,” I believe that this trial testimony provided substantial evidence to support Paris’s conviction. Id. at 324, 30 P.3d at 930 (quoting State v. Jenkins, 93 Hawai'i 87, 99, 997 P.2d 13, 26 (2000)).
As the Majority points out, Villanueva did testify that, under the terms of the extended furlough agreement, Paris’s “new place of detention” would be his mother’s house. However, “[i]t is well-settled that an appellate comí; will not pass upon issues depen-dant upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact.” State v. Mattiello, 90 Hawai'i 255, 259, 978 P.2d 693, 697 (1999) (internal brackets and citation omitted). Moreover, the trier of fact may accept or reject any witness’s testimony in whole or in part. See, e.g., State v. Hopkins, 60 Haw. 540, 542, 592 P.2d 810, 812 (1979). Thus, it is not for this court to decide which testimony to credit. In any event, Villanueva’s characterization of a legal conclusion is not disposi-tive.
It is also not dispositive that the prosecutor stated in his closing argument that “we can cross out correctional facility, detention facility, and we’re just going to look at [whether] the defendant escaped from custody.” The question before us is whether there was sufficient evidence to support Paris’s conviction, and “it is axiomatic that ‘the arguments of counsel are not evidence,’ “ State v. Quitog, 85 Hawai'i 128, 144, 938 P.2d 559, 575 (1997) (quoting State v. Marsh, 68 Haw. 659, 661, 728 P.2d 1301, 1303 (1986)).
Therefore, our inquiry into the sufficiency of the evidence must focus on the testimony and other evidence presented at trial. See, e.g., State v. Getz, 131 Hawai'i 19, 28, 313 P.3d 708, 717 (2013) (reviewing the testimony at trial when determining the sufficiency of the evidence); Kalaola, 124 Hawai'i at 50-51, 237 P.3d at 1116-17 (same). As discussed above, when viewing the testimony in “the strongest light for the prosecution,” there was substantial evidence to support the jury’s verdict finding Paris guilty of escape in the second degree. Kalaola, 124 Hawai'i at 49, 237 P.3d at 1115.
At its core, this case presents the following factual scenario: an inmate is conditionally released while serving time, flees, is charged with escape, and then argues that the offense of escape does not apply. This fact pattern is not new, and Hawaii courts have consistently affirmed escape convictions based on an inmate’s escape from conditional release.[2] *268 See State v. Smith, 59 Haw. 456, 462-63, 583 P.2d 337, 342-43 (1978); State v. Kealoha, 71 Haw. 251, 252, 787 P.2d 690, 691 (1990); see also Provisional Gov’t of Hawaiian Islands v. Meyer, 9 Haw. 363, 363-64 (Haw.Rep.1894) (affirming escape conviction of defendant on a road crew who fled when the guard “allowed the prisoner to go into the bush for a particular purpose”). Paris’s conviction of escape is consistent with these long-standing decisions.
I disagree with the Majority’s attempt to distinguish Smith and Kealoha on the basis that Paris was not “required to return to plvysical confinement at [Laumaka,]” but was “staying] in the community.” The fact that Paris was not staying overnight at Laumaka is irrelevant. Smith and Kealoha stand for the proposition that an inmate who is released from a correctional facility on furlough and does not return pursuant to the furlough restrictions can be convicted of escape, even though the facility did not have physical control over the inmate at the time of escape. See Smith, 59 Haw. at 463-64, 583 P.2d at 343 (“While the [correctional] facility did not have actual physical control over the appellant at the time he is alleged to have escaped, it had control and custody in the sense that appellant was released on furlough not as a free person but as one legally bound by restrictions.”); Kealoha, 71 Haw. at 252, 787 P.2d at 691 (“Obviously appellant was granted a furlough on condition that she return when that furlough expired. When she failed to do so without a legitimate excuse, she was guilty of escape, as that term is used in the statute.”). Similarly here, under Paris’s furlough restrictions, Paris was required to return to Laumaka at the expiration of his one-week pass, but failed to do so. Thus, the holdings of Smith and Kealoha are applicable to this case and support Paris’s conviction.
Instead, I would hold that there was sufficient evidence to support Paris’s conviction of escape in the second degree, but that he is entitled to a new trial based on the improper jury instruction .[3]
For these reasons, I respectfully dissent.

. I also briefly address the adequacy of the charge against Paris. I disagree with the Majority that the State was required to include the statutory definition of “custody" in the charge. “[Wjhere the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient.” State v. Wheeler, 121 Hawai'i 383, 393, 219 P.3d 1170, 1180 (2009) (quoting State v. Jendrusch, 58 Haw. 279, 282, 567 P.2d 1242, 1245 (1977). The charge tracked the language of HRS § 710-1021, and I believe that the definition of "custody” in HRS § 710-1000 comports with its commonly understood definition. Thus, I would hold that the complaint provided Paris with adequate notice of the charge against him.

. Indeed, it appears that the "majority rule” in other state and federal jurisdictions is that "a prisoner’s failure to return from work release or furlough constitutes an escape.” Smith v. State, 361 A.2d 237, 238 (1976); see also United States v. Rudinsky, 439 F.2d 1074, 1076 (6th Cir.1971); United States v. Coggins, 398 F.2d 668, 668 (4th Cir.1968); McCullough v. United States, 369 F.2d 548, 549 (8th Cir.1966); Nace v. United States, 334 F.2d 235, 235 (8th Cir.1964); People v. Labrum, 25 Cal.App.3d 105, 101 Cal.Rptr. 602, 604-605 (Cal.Ct.App.1972); People v. Haskins, 177 Cal.App.2d 84, 2 Cal.Rptr. 34, 46 (Cal.Dist.Ct.App.1960); Cutter v. Buchannan, 286 S.W.2d 902, 903-904 (Ky.1956); State v. Holbrook, 318 A.2d 62, 67-68 (Me.1974); Shifflett v. State, 4 Md.App. 227, 242 A.2d 182, 184 (Md.Ct.Spec.App.1968); State ex rel. Johnson v. Warden, 196 Md. 672, 75 A.2d 843, 844 (Md.1950); State v. Glenn, 193 Neb. 230, 226 N.W.2d 137, 139 (Neb.1975) (dicta); Commonwealth v. Bey, 221 Pa.Super. 405, 292 A.2d 519, 521 (Pa.Super.Ct.1972); State v. Furlong, 110 R.I. 174, 291 A.2d 267, 270 (R.I.1972); State v. Kiggins, 86 S.D. 612, 200 N.W.2d 243, 244 (S.D.1972).

. I disagree with the Majority's assertion that the doctrine of judicial estoppel would prevent the State from retrying Paris on the theory that he escaped from a correctional facility. "Pursuant to the doctrine of judicial estoppel, a party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his action." State v. Alder, 108 Hawai'i 169, 175, 118 P.3d 652, 658 (2005) (quoting Roxas v. Marcos, 89 Hawai'i 91, 124, 969 P.2d 1209, 1242 (1998) (internal brackets omitted; emphasis added). In other words, judicial estop-pel would only prevent the State from retrying Paris on the "correctional facility” theory if Paris was prejudiced by the prosecutor's statement in his closing argument that "we’re just going to look at [whether] the defendant escaped from custody.”
Paris was not prejudiced by this statement because it occurred after the close of evidence, and the prosecutor had not explicitly focused on the "custody” theory until that point. Indeed, during his opening statement, the prosecutor stated, "At the end of this case, the State will prove beyond a reasonable doubt that the defendant ... did intentionally escape from a correctional or detention facility or from custody.” The prosecutor did not present evidence inconsistent with the "correctional facility” theory and in fact specifically asked Villanueva if Laumaka was a correctional facility. Paris was therefore not precluded from presenting a complete defense or otherwise prejudiced by the prosecutor’s statement in his closing argument. Accordingly, the doctrine of judicial estoppel does not apply here.